UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SHAWNA ARVIDSON, SHERYL
CARLSON, and KIMBERLY STOFFEL,

Case No. 19-CV-2336 (PJS/HB)

Plaintiffs,

v.

ORDER

MIDWESTONE BANK,

Defendant.

Racey Rodne, Andrew J. Rorvig, and Aaron S. Eken, MCELLISTREM FARGIONE P.A., for plaintiffs.

William L. Davidson, Brian A. Wood, Patrick J. Larkin, and Susan E. Stokes, LIND, JENSEN, SULLIVAN & PETERSON, P.A., for defendant.

Plaintiffs Shawna Arvidson, Sheryl Carlson, and Kimberly Stoffel are current and former employees of defendant MidWestOne Bank ("the Bank"). Plaintiffs filed this lawsuit against the Bank after learning that Matthew Heger, one of their former co-employees, had hidden a video camera in the employee bathroom and surreptitiously recorded them. This matter is now before the Court on the Bank's motion for summary judgment. For the reasons that follow, that motion is granted.

The relevant facts are undisputed and well known to the parties. To briefly summarize: Plaintiffs and Heger worked together at the Bank for several years until Heger's position was eliminated in December 2015 as the result of a merger. ECF

No. 29-13 at 14–15; ECF No. 29-18 at 4–5. In the spring of 2017—more than a year after Heger left the bank—Heger's then-wife discovered a thumb drive containing videos of plaintiffs and other Bank employees that Heger had recorded using a hidden camera in the employee bathroom at the Bank. *See* ECF No. 34-1 at 23–24; ECF No. 29-4 at 16. Heger was criminally prosecuted and eventually pleaded guilty to two counts of interference with privacy in violation of Minn. Stat. § 609.746. ECF No. 29-15. Plaintiffs filed suit against the Bank in state court in August 2019. The Bank removed the case to this Court and, following discovery, moved for summary judgment.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255.

Plaintiffs assert two claims against the Bank: negligent supervision and negligent retention. To succeed on either claim, a plaintiff must establish that she sustained—or was threatened with or placed in reasonable apprehension of—a *physical* injury.

*St. Hilaire v. Minco Prods.*, 288 F. Supp. 2d 999, 1010 (D. Minn. 2003) ("To maintain an action for either negligent retention or negligent supervision, the existence of a threat, or reasonable apprehension of actual *physical injury* is required." (citation and quotation marks omitted)).

Plaintiffs concede that, to recover on their claims, they must prove a physical injury or threat or apprehension thereof. ECF No. 39 at 12. Plaintiffs further concede that they "are only presenting nonphysical injury complaints of emotional distress." *Id.* at 13. Plaintiffs maintain, however, that Heger's act of recording them in the employee bathroom constitutes a threat of physical injury or put them in reasonable apprehension of future physical injury. *Id.*

Plaintiffs' assertions are unsupported by the record. Heger recorded plaintiffs *without their knowledge*. Plaintiffs had no idea that they were being recorded and did not learn about the recording until more than a year after Heger stopped working with them. Heger testified that he no longer has access to the videos and that he never shared them with anyone, ECF No. 34-1 at 6–7; there is no evidence contradicting his testimony. Heger further testified that he could not recall ever touching plaintiffs outside of "possibly shaking their hand[s]," ECF No. 29-13 at 19; again, there is no evidence contradicting his testimony.

Plaintiffs testified that they felt extremely violated by Heger's criminal behavior and suffered severe emotional distress. Heger's actions were outrageous, and the Court does not for a moment doubt that the plaintiffs suffered severe emotional distress. But Minnesota law is clear that emotional distress (no matter how severe) is not sufficient to satisfy the physical-injury requirement of negligent-supervision and negligent-retention claims. *See, e.g.*, *Smith v. DataCard Corp.*, 9 F. Supp. 2d 1067, 1083–84 (D. Minn. 1998); *Johnson v. Peterson*, 734 N.W.2d 275, 277–78 (Minn. Ct. App. 2007); *Bruchas v. Preventive Care, Inc..*, 553 N.W.2d 440, 443 (Minn. Ct. App. 1996). On the record before the Court, a reasonable jury could not find that Heger's recording of plaintiffs without their knowledge physically injured them, threatened to physically injure them, or put them in reasonable apprehension of physical injury. Accordingly, the Bank is entitled to summary judgment.

Even if plaintiffs could satisfy the physical-injury requirement, the Court would still grant the Bank's motion for summary judgment because Heger's actions were not reasonably foreseeable. *See Doe YZ v. Shattuck-St. Mary's Sch.*, 214 F. Supp. 3d 763, 786 (D. Minn. 2016) (to recover for negligence, plaintiff must establish that the harm suffered was foreseeable). In determining whether harm is reasonably foreseeable, courts ask "whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Doe 175 ex rel. Doe 175*

*v. Columbia Heights Sch. Dist.*, 873 N.W.2d 352, 360 (Minn. Ct. App. 2016) (citation and quotation marks omitted). "In the context of . . . negligent supervision claims, foreseeability means 'a level of probability which would lead a prudent person to take effective precautions.'" *Id.* (citation omitted). In the context of negligent-retention claims, the relevant inquiry is whether the employer retained "a person with known propensities, or propensities which should have been discovered by reasonable investigation" in a position in which it should have been foreseeable that the person "posed a threat of injury to others." *Bruchas*, 553 N.W.2d at 442 (citation omitted).

There is no evidence that anyone at the Bank had any idea that Heger had planted a camera in the employee bathroom. The Bank learned of Heger's actions at the same time that plaintiffs did—about a year after the Bank had terminated Heger's employment as a result of the merger. Plaintiffs allege that it was nevertheless foreseeable that Heger would secretly record them using a hidden camera in the employee bathroom because (1) Heger engaged in consensual sexual activity with a coworker on the Bank premises, (2) Heger viewed pornography while at work, and (3) Heger was copied on and contributed to sexually explicit email chains.[1]

---

[1] Plaintiffs also allege that Heger's conduct was foreseeable because he invited "sexual partners" to the Bank parking lot. ECF No. 39 at 1, 10–11. This allegation is apparently a reference to Heger's admission to his ex-wife that he advertised for sexual partners online and that, although he "never met with anyone," he directed people to drive to the parking lot of a restaurant near the Bank so Heger could look out his
(continued...)

First, with respect to Heger's sexual activity at the Bank:  Sometime prior to Heger's termination, the Bank received an anonymous letter purportedly from a Bank customer complaining of "something . . . very disgusting" that occurred in a storage room at the Bank between a teller and the man who "sits in the open office area."[2]  ECF No. 29-5 at 24.  Heger was the only man sitting in the open area at the time.  Heger was questioned about the letter's allegations by his supervisor, Donavan McGuire.  ECF No. 29-10 at 12.  Heger denied any wrongdoing, and McGuire testified that, with nothing to go on other than an anonymous letter making vague allegations, he felt that further investigation was not warranted.  *Id.* at 12–14.

Drawing all reasonable inferences in plaintiffs' favor, a reasonable jury could find that the Bank knew or should have known that Heger and another employee had engaged in consensual sexual activity in a storage room at the Bank.  But this does not make it reasonably foreseeable that Heger would hide a camera in the employee bathroom to surreptitiously record plaintiffs and other Bank employees.

---

[1](...continued)
window at the Bank to "see if people would actually come."  ECF No. 29-14 at 6.  There is no evidence that Heger invited potential "sexual partners" to the Bank or that the Bank knew or should have known of Heger's activities.

[2]Heger testified that he does not recall engaging "in any sort of sex act inside the bank."  ECF No. 29-13 at 7.  But another Bank employee testified that she and Heger "hook[ed] up in the storage area at the workplace" on a single occasion.  ECF No. 34-1 at 26.  For purposes of ruling on the Bank's summary-judgment motion, the Court assumes that the Bank employee's testimony is true.

For purposes of a negligent-supervision claim, "alleged red flags" must be "sufficiently similar to or indicative of" the tortious conduct to give the employer notice that the conduct is likely to occur. *Doe 175*, 873 N.W.2d at 361. Sexual activity in a workplace between two consenting coworkers is not "sufficiently similar" to planting a hidden camera in an employee bathroom. Plaintiffs have introduced no evidence to suggest that the former is "indicative of" the latter. *See C.B. ex rel. L.B. v. Evangelical Lutheran Church in Am.*, 726 N.W.2d 127, 136 (Minn. Ct. App. 2007) (finding that victim's frequent overnight visits with abuser, abuser's lavishing of inappropriate and expensive gifts on victim, and fact that victim had to be dragged kicking and screaming by her parents to the abuser's car were not sufficient "red flags" to make sexual abuse foreseeable for purposes of negligent-supervision claim). Nor have plaintiffs introduced any evidence that engaging in consensual sexual activity in the workplace is somehow demonstrative of "dangerous proclivities" that should have made Heger's later conduct foreseeable. *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423 (Minn. Ct. App. 1993); *see also L.M. ex rel S.M. v. Karlson*, 646 N.W.2d 537, 541, 545 (Minn. Ct. App. 2002) (finding complaints that teacher was "verbally abusive and physically rough" and made "inappropriate comments" in front of children insufficient to make sexual abuse foreseeable for purposes of negligent-retention claim).

It bears noting that Carlson was one of the Bank employees to whom the anonymous letter was addressed—and, in fact, first brought the letter to McGuire's attention.  ECF No. 29-5 at 24; ECF No. 29-10 at 10.  Notwithstanding her knowledge of the letter's contents, Carlson testified that she had no "concerns about [Heger] in the workplace" and that she did not believe that Heger "had any dangerous propensities" or "that he was sexually deviant."  ECF No. 29-4 at 14–16.  Indeed, Carlson testified that she advocated for keeping Heger on staff at the Bank after the merger.  *Id.* at 15–16.  Neither Carlson nor McGuire nor anyone else who read the anonymous letter would have had any reason to believe that Heger would plant a hidden camera in the employee bathroom.

Second, with respect to viewing pornography:  Plaintiffs have produced no evidence that anyone at the Bank knew or had any reason to know that Heger was viewing pornography at work until long after Heger's position at the Bank had been eliminated.[3]  The Bank had employee-monitoring software in place during the relevant time frame and reasonably relied on that software to prevent employees from accessing

---

[3] Plaintiffs' allegations are based on Carlson's testimony that, after the video recordings were discovered, computer technician Andrew Weise "said he had found stuff on [Heger's] computer and was constantly cleaning it," but that Weise never reported it to management.  ECF No. 29-4 at 36.  But Weise testified that he had no knowledge that Heger had ever viewed pornography at work, that he could remember removing a virus from Heger's computer on only one occasion, and that if he had discovered pornography on Heger's computer he would have immediately reported it to management.  ECF No. 29-11 at 10–12, 15.

pornography at work.[4]  ECF No. 29-11 at 5–6; ECF No. 29-19 at 3.  Based on these facts, a reasonable jury could not find that the Bank was aware or should have been aware that Heger was accessing pornography at work.

Moreover, even if the Bank had been aware that Heger looked at pornography on his work computer, viewing pornography at work does not make it reasonably foreseeable that Heger would surreptitiously record plaintiffs in the employee bathroom.  Pornography is a multibillion dollar industry.  Millions of people look at pornography, but almost none of them plant hidden cameras in the bathrooms of their workplaces.  Indeed, plaintiffs' own expert witness testified that she is not aware of any authority suggesting that viewing pornography is an indicator that the viewer may also place a hidden camera in a bathroom, or an indicator that the viewer has dangerous propensities generally.  ECF No. 29-12 at 5.

Finally, with respect to the sexually explicit email chains:  There is no question that employees of the Bank—including not only Heger, but two of the plaintiffs in this action (Carlson and Arvidson)—shared sexually explicit emails with each other.  *See* ECF No. 29-4 at 22–32; ECF No. 29-6 at 11–15.  McGuire (Heger's supervisor) testified that he had no knowledge that these emails were being circulated, and Heger testified that the emails were intentionally concealed from McGuire.  ECF No. 34-1 at 20;

---

[4]Heger testified that he accessed explicit images on his work computer using Flickr, which is a photo-sharing website.  ECF No. 34-1 at 4.

ECF No. 29-13 at 6–7.  Given that two plaintiffs helped to conceal these emails from the Bank, plaintiffs' argument that the Bank nevertheless should have discovered the emails rings hollow.

But even assuming that the Bank knew or should have known about these emails, Heger's participation did not make his conduct foreseeable.  Risqué emails are common in the workplace; hidden cameras in workplace bathrooms are almost unheard of.  Carlson and Arvidson themselves testified that, although they received the emails and saw the content that Heger and others were sharing, they were stunned to learn that Heger had secretly recorded them in the employee bathroom.[5]  The evidence in the record is that *everyone* was shocked when they learned of Heger's crimes—including those who knew him best at home (such as his then-wife) and those who knew him best at work (such as Carlson).

Because the facts known to the Bank during the period of Heger's employment did not raise the types of "red flags" that would "'lead a prudent person to take effective precautions,'" the Bank is entitled to summary judgment on plaintiffs' negligent-supervision claim.  *Doe 175*, 873 N.W.2d at 360 (citation omitted).  And

---

[5]*See* ECF No. 29-4 at 33 (Carlson testifying that despite the content of the emails, she did not think that Heger had "dangerous propensities" or that he was "sexually deviant"); ECF No. 29-6 at 6, 10, 17 (Arvidson testifying that she had no "complaints or concerns" about Heger, that "nobody would have ever expected" him to hide a camera in the bathroom, and that she was "stunned" to learn that he had done so).

because these facts were insufficient to put the Bank on notice that Heger had some "propensity" or "dangerous proclivity" that made the threat he posed to others foreseeable, the Bank is also entitled to summary judgment on plaintiffs' negligent-retention claim.  *Bruchas*, 553 N.W.2d at 442; *Yunker*, 496 N.W.2d at 423.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion for summary judgment [ECF No. 26] is GRANTED and this action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 31, 2021                      s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge